

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00292-CV

**IN THE INTEREST OF J.A.D.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01747
Honorable Raul Perales, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Lori Massey Brissette, Justice

Delivered and Filed: October 16, 2024

AFFIRMED

Appellant Mother appeals the trial court's order terminating her parental rights to her child, J.A.D.[1]  In her first issue, Mother argues the trial court lost jurisdiction when it did not make the required findings to extend the case beyond the one-year deadline.  In her second and third issues, Mother challenges the sufficiency of the evidence supporting termination of her parental rights under statutory grounds (D) and (E).  In her fourth issue, Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination was in the child's best interest.  We affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Father" and "Mother" and we refer to children using their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  We also refer to J.A.D. as "the child."

## BACKGROUND

The Department became involved in the underlying case when J.A.D.'s younger sibling died while in Mother's care. The Department determined Mother was a neglectful parent and had a history of drug and alcohol abuse.

On October 28, 2022, the Department filed a petition seeking termination of Mother's parental rights. The trial court held a bench trial on February 28, 2024. The trial court heard testimony from Mother and the Department's caseworker, Michelle Saldana.

On March 25, 2024, the trial court signed an order terminating Mother's parental rights to J.A.D. The trial court terminated Mother's parental rights based on statutory grounds (D), (E), (O), and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (O), (P). The trial court also found it was in the child's best interest to terminate Mother's parental rights. *See id.* § 161.001(b)(2). Mother appeals.

## JURISDICTION

In her first issue, Mother argues the trial court's jurisdiction over the case automatically terminated on October 30, 2023 because the trial court did not extend the one-year deadline nor did it make the required findings to extend the deadline under section 263.401 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 263.401. Because trial did not commence until February 28, 2024, Mother contends the trial court lacked jurisdiction to render the termination order and thus the termination order is void.

Subsection 263.401(a) states:

(a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named

conservator of the child is terminated and the suit is automatically dismissed without a court order. Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the automatic dismissal date.

*Id.* § 263.401(a). Subsection 263.401(a) "provides that if a trial court fails to commence the trial on the merits or grant an extension within one year after the trial court appointed the Department as temporary managing conservator, the trial court's jurisdiction terminates, and the case is automatically dismissed." *In re G.X.H.*, 627 S.W.3d 288, 296 (Tex. 2021).

Subsection 263.401(b) "sets forth the circumstances in which the automatic dismissal date—and thus the trial court's jurisdiction over the suit—may be extended." *Id.* at 296. It provides:

(b) Unless the court has commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a). If the court retains the suit on the court's docket, the court shall render an order in which the court:

(1) schedules the new date on which the suit will be automatically dismissed if the trial on the merits has not commenced, which date must be not later than the 180th day after the time described by Subsection (a);

(2) makes further temporary orders for the safety and welfare of the child as necessary to avoid further delay in resolving the suit; and

(3) sets the trial on the merits on a date not later than the date specified under Subdivision (1).

TEX. FAMILY CODE ANN. § 263.401(b).

"[W]hile a trial court's failure to timely extend the automatic dismissal date before that date passes—through a docket-sheet notation or otherwise—is jurisdictional, claimed defects relating to the other requirements of [subsection] 263.401(b) are not." *G.X.H.*, 627 S.W.3d at 301. "Accordingly, with the exception of a trial court's failure to extend the automatic dismissal date

before it passes, complaints regarding the trial court's compliance with the requirements in subsection (b) must be preserved for appellate review." *Id.* "[T]rial courts are empowered to make [section 263.401] findings in writing in a separate instrument or orally in the presence of a court reporter." *Id.* at 299.

Here, the first automatic dismissal date was October 30, 2023. The parties initially appeared for trial on October 25, 2023. Mother announced not ready and requested an extension so she would have more time to complete services. The reporter's record reflects the trial court expressly granted the extension pursuant to subsection 263.401(b) and the Department stated the new dismissal date would be April 25, 2024. Thus, on October 25, 2023, the trial court extended the October 30, 2023 dismissal date to April 25, 2024. Accordingly, Mother's complaint—that the trial court did not extend the automatic dismissal date before that date passed—lacks merit.

Mother also argues the trial court lost jurisdiction because it did not make the required findings "that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." TEX. FAM. CODE ANN. § 263.401(b). As mentioned above, a trial court's failure to timely extend the automatic dismissal date is jurisdictional, but "claimed defects relating to the other requirements of [subsection] 263.401(b) are not." *In re J.S.*, 670 S.W.3d 591, 603 (Tex. 2023) (quoting *G.X.H.*, 627 S.W.3d at 301). "The 'other' non-jurisdictional requirements of [subsection] 263.401(b) include all the requirements of that subsection except the requirement that the trial court grant an extension of the initial automatic dismissal date before it passes—a requirement that also appears in subsection (a), which does contain jurisdictional language." *J.S.*, 670 S.W.3d at 603–04. "Thus,

although subsection (b)'s requirements that the trial court make the 'extraordinary circumstances' and 'best interest' findings are mandatory, they are not jurisdictional." *Id.* at 604.

Because the "extraordinary circumstances" and "best interest" findings are non-jurisdictional requirements, Mother must have complained of the trial court's ruling omitting these findings via a timely request, objection, or motion to preserve the error for appeal. *See G.X.H.*, 627 S.W.3d at 301; TEX. R. APP. P. 33.1(a)(1)(A); *see also J.S.*, 670 S.W.3d at 605 (holding a parent could not present her complaint for appellate review because the parent "did not timely apprise the trial court of her complaint that it failed to make the required 'extraordinary circumstances' finding when it extended the automatic dismissal deadline"). Here, Mother did not object to the trial court's failure to comply with the requirement to make the non-jurisdictional findings, and "that error cannot be addressed for the first time on appeal." *J.S.*, 670 S.W.3d at 606. Therefore, Mother has failed to preserve the issue for appeal.

Accordingly, Mother's first issue is overruled.

### STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)

(conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This

is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### STATUTORY GROUNDS FOR TERMINATION

In her second and third issues, Mother argues there is insufficient evidence to support the trial court's findings under statutory grounds (D) and (E).

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground. Because the findings under subsection 161.001(b)(1)(D) and (E) have consequences for termination of parental rights as to other children, termination on these grounds implicates significant due process concerns for Mother. TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Due process requires us to review the trial court's findings under both subsections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See N.G.*, 577 S.W.3d at 235–36; *see also R.R.A.*, 687 S.W.3d at 279 ("Although termination under (P) is sufficient to reverse the judgment of the court of appeals, we must also review termination under subsections

(D) and (E) because a finding of termination under those grounds may justify termination of parental rights to other children in subsection (M).”); *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) (“[W]e may not bypass Father’s evidentiary challenges to [s]ubsections (D) and (E) . . . because termination of a parent’s rights under either can serve as a ground for termination of his rights to *another* child.”).

Here, the trial court found evidence Mother “knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child . . . [and] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child . . . .” *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). To endanger a child under subsections (D) and (E) means to expose the child to loss or injury or to jeopardize the child’s emotional or physical health. *See J.W.*, 645 S.W.3d at 748; *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). “Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it does not require that there be conduct directed at the child or that the child actually suffer injury.” *J.W.*, 645 S.W.3d at 748 (internal quotation marks and alterations omitted).

Though both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at *2 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.). Subsection (D) concerns the child’s living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child’s environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (E), the cause of the endangerment must be the parent’s

conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

"While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm." *R.R.A.*, 687 S.W.3d at 278. "A reviewing court should not evaluate drug-use evidence in isolation; rather it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's 'ability to parent.'" *Id.*

### 1. *Statutory Subsection D*

Subsection (D) allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(D). The child's "environment" encompasses the suitability of the child's living conditions and the conduct of parents or others in the home. *S.R.*, 452 S.W.3d at 360. "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection D." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.). "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *Id.* Subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

Under Subsection (D), the trial court examines "evidence related to the environment of the child[] to determine if the environment was the source of endangerment to the [child's] physical or emotional well-being." *J.T.G.*, 121 S.W.3d at 125. Parental conduct, however, is a factor that

contributes to the child's environment. *Id*. The time period relevant to a review of conduct and environment under statutory ground (D) is prior to the child's removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Here, the trial court heard testimony that Mother has abused illegal drugs since she was pregnant with J.A.D. *See In re J.A.B.*, No. 04-23-00907-CV, 2024 WL 1421986, at *2 (Tex. App.—San Antonio Apr. 3, 2024, pet. denied) (mem. op.) ("Parental and caregiver illegal drug use and drug-related criminal activity likewise support[] the conclusion that the children's surroundings endanger their physical or emotional well-being."). Mother admitted J.A.D. tested positive for drugs when he was born, supporting an inference that Mother's illegal drug use exposed J.A.D. to conditions or surroundings that endangered his physical or emotional well-being. *See In re A.M.A.*, No. 13-22-00011-CV, 2022 WL 1110993, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 14, 2022, no pet.) (mem. op.) (holding Mother's illegal drug use throughout her pregnancy and a drug-positive child at birth supports a finding that Mother knowingly placed the child in conditions or surroundings that endangered the child); *see also J.W.*, 645 S.W.3d at 749 (agreeing "that a parent's knowledge of the other parent's drug use during pregnancy and corresponding failure to attempt to protect the unborn child from the effects of that drug use can contribute to an endangering environment and thus support an endangerment finding").[2] In May 2022, Mother gave birth to another child who tested positive for drugs. That child subsequently died prompting the Department to remove J.A.D. from the home.[3] In its investigation into the child's death, the Department found Mother was a neglectful parent due to her drug and alcohol

---

[2] We recognize that the supreme court in *In re J.W.* was reviewing whether the father of the child took steps to protect the child from the mother's illegal drug use while the child was in the womb. *In re J.W.*, 645 S.W.3d 726, 749–50 (Tex. 2022). However, the holding in *In re J.W.* that is relevant to this case is that the mother's womb can be an endangering environment if the child is exposed to illegal drugs *in utero*.

[3] The record does not reflect when J.A.D.'s younger sibling died. The sibling was born in May 2022 and J.A.D. was removed from Mother's care five months later in October 2022.

use. Based on this evidence the trial court could have formed a firm belief or conviction that Mother's drug and alcohol abuse created a dangerous environment that led to the death of J.A.D.'s younger sibling. *See R.S.-T.*, 522 S.W.3d at 109. Though there was no direct testimony on the matter, the trial court could have inferred that J.A.D. was also in Mother's care when his younger sibling died because the Department subsequently removed J.A.D. from Mother's care when it was investigating the sibling's death. As such, the trial court could have concluded J.A.D. was also exposed to the endangering conditions that led to the younger sibling's death.

### 2. Statutory Subsection E

Subsection (E) permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *A.B.R.*, 2020 WL 1159043, at *3. "[E]ndangering conduct is not limited to actions directed towards the child." *J.O.A.*, 283 S.W.3d at 345.

"Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re D.F.S.*, No. 04-20-00441-CV, 2021 WL 603364, at *4 (Tex. App.—San Antonio Feb. 17, 2021, pet denied) (mem. op.). "Thus, evidence of illegal drug use by a parent and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsection (E)." *Id.*

Here, the evidence supporting the trial court's finding under statutory ground (D) also supports the trial courts finding under statutory ground (E). As mentioned above, the trial court heard testimony that Mother has struggled with drug addiction since before J.A.D. was born. *See J.T.G.*, 121 S.W.3d at 125 ("A mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child."). "Evidence that a parent continued to use illegal drugs even though the parent knew her parental rights were at risk is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature endangers a child's well-being." *A.L.S.*, 660 S.W.3d at 271. J.A.D.'s younger sibling died while in Mother's care and the Department determined Mother was a neglectful parent due to her drug and alcohol use. *In re A.A.M.*, 464 S.W.3d 421, 426 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("Illegal drug use creates the possibility that the parent will be impaired or imprisoned and thus incapable of parenting."). At trial, Mother admitted she was drinking alcohol when the younger sibling died. She also admitted she had relapsed into using methamphetamines prior to the child's death. The trial court could have reasonably inferred that Mother's course of conduct that endangered J.A.D.'s younger sibling also endangered J.A.D. *See J.O.A.*, 283 S.W.3d at 345 ("[E]ndangering conduct is not limited to actions directed towards the child."); *A.A.M.*, 464 S.W.3d at 426 ("Drug abuse and its effect on the ability to parent can be part of an endangering course of conduct.").

Mother attended three different drug treatment programs while the case was pending. She did not successfully complete the first two drug treatment programs. Mother successfully completed the third drug treatment program and it was recommended that she move to a "sober living" home after she left the rehab facility. Mother testified she went to a sober living home but voluntarily left after only a week because she "listened to [her] boyfriend at the time[.]"

During the initial trial setting on October 25, 2023, the trial court granted Mother's oral motion to continue the case and ordered Mother to take a drug test within twenty-four hours. Mother conceded she did not take the drug test. The trial court heard testimony that the Department had referred Mother to nine drug tests since the October 25, 2023 trial setting. Saldana testified that Mother did not report to any of the drug tests. Saldana further testified Mother had reported the month before trial that she was using one gram of methamphetamines per day and she last used drugs on the Thursday before trial. When asked whether Mother is currently using drugs, Mother responded: "No. But I have. I did relapse." Mother later admitted she was taking methamphetamines during the pendency of the case and had been clean for only two weeks prior to trial. Based on this evidence, the trial court could have reasonably inferred that Mother's continued struggle with drug abuse affects her ability to parent and creates a substantial risk that she will be unable to care for J.A.D. due to her impairment. Thus, the trial court could have formed a firm belief or conviction that Mother's course of conduct endangered J.A.D.'s physical and emotional well-being. *See R.R.A.*, 687 S.W.3d at 278 ("[A] pattern of parental behavior that presents a substantial risk of harm to the child permits a factfinder to reasonably find endangerment."); *D.F.S.*, 2021 WL 603364, at *4 ("[A] pattern of drug abuse will support a finding of conduct endangering a child even if there is no evidence that the drug use injured the child.").

The trial court also heard testimony from Mother that she has pending criminal charges against her for unauthorized use of a motor vehicle and possession of controlled substances. These charges also constitute a violation of her probation stemming from a previous charge for felony possession of controlled substances, and Mother indicated the State was moving to revoke her probation. *A.A.M.*, 464 S.W.3d at 426 ("Drug use and the imprisonments relating to it harm the physical and emotional well-being of a child.").

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child . . . [and] engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E); *see also H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's subsection (D) and (E) findings.

Accordingly, Mother's second and third issues are overruled.

## BEST INTEREST

In her fourth issue, Mother argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in J.A.D.'s best interest.

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[4]

---

[4] These factors include:

(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's

*See id.* § 263.307(b). We also consider the *Holley* factors.[5] *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet.

---

family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

"Illicit drug use is relevant to multiple *Holley* factors, including the child[]'s emotional and physical needs now and in the future, the emotional and physical danger to the child[] now and in the future, Mother's parental abilities, the stability of Mother's home, and the acts or omissions which may indicate an improper parent-child relationship." *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.). As mentioned in the statutory grounds section, Mother has not been able to show sobriety throughout the case and has struggled with drug abuse since before J.A.D. was born. "Continued illegal drug use by the parent is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct, and that termination is in the best interest of the child." *In re J.S.R.*, No. 04-21-00517-CV, 2022 WL 1559107, at *4 (Tex. App.—San Antonio May 18, 2022, pet. denied) (mem. op.) (alterations omitted). The trial court could have reasonably formed a firm belief or conviction that termination of Mother's parental rights was in J.A.D.'s best interest because Mother's drug addiction would continue to render her unable to provide for J.A.D. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (stating a parent's history of substance is a factor considered by the trial court in determining the child's best interest).

Moreover, Mother is facing two criminal charges and indicated the State was moving to revoke her probation for a prior possession of a controlled substance charge. *See In re G.V.S.*, No. 04-18-00563-CV, 2018 WL 6624398, at *4 (Tex. App.—San Antonio Dec. 19, 2018, pet. denied) (mem. op.) ("A parent's criminal activities and history are also relevant to a best interest analysis—specifically to the emotional and physical danger to the child."). "[R]outinely subjecting a child to the probability that [the child] will be left alone because [the child's] parent

is in jail endangers the child's physical and emotional well-being." *In re R.M.H.*, No. 04-23-00765-CV, 2023 WL 8103188, at *4 (Tex. App.—San Antonio Nov. 22, 2023, no pet.) (mem. op.).

In addition to the evidence regarding Mother's drug addiction and criminal history, the trial court also heard evidence that Mother failed to complete all the services on her service plan. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (concluding evidence that a parent's failure to comply with the court-ordered service plan may also support the trial court's best-interest determination); *In re A.H.*, No. 04-15-00416-CV, 2015 WL 7565569, at *9 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (holding failure to complete family service plan is indicative of failure to prioritize child). Mother's service plan, which was admitted into evidence, provided that Mother was to maintain stable employment and housing, participate and complete a parenting class and domestic violence class, submit to random drug testing, successfully complete a drug assessment and follow recommendations from the assessment, participate and complete a psychological evaluation, and participate in counseling. Mother signed the plan and testified she knew the plan was made an order of the court and that failure to comply with her service plan could result in termination of her parental rights. Mother conceded, and Saldana verified, Mother was not in compliance with her service plan.

When asked what services Mother successfully completed, Mother testified she successfully completed the parenting class, drug treatment, and that she took an autistic learning course. As mentioned above, Mother did not successfully complete her first two attempts at drug treatment, but she did complete her third attempt. However, Mother admitted she did not follow through on the recommendation to go to a sober living home and the trial court heard evidence that Mother relapsed after drug treatment.

Mother testified she was unsuccessfully discharged from counseling and did not complete her domestic violence classes despite having a history of domestic violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (stating the trial court considers in its best-interest determination the parent's willingness and ability "to seek out, accept, and complete counseling services"); *see also A.H.*, 2015 WL 7565569, at *7 (concluding a parent's failure to address domestic violence exposes the child to potential future emotional and physical danger and thus supports a finding that termination of parental rights is in the child's best interest). At first, Mother stated she was kicked off the waiting list for domestic violence classes three times because she went into rehab. Then, she stated she was at fault two of the times because she was late to the class and the provider rescheduled.

Saldana testified Mother is not currently employed. Although not a requirement under her plan, Mother testified she is prescribed psychotropic medications to address her mental health. However, Mother stated she is not in compliance with her psychiatric treatment and medication schedule. *See In re M.R.P.*, No. 04-22-00312-CV, 2022 WL 6815173, at *6 (Tex. App.—San Antonio Oct. 12, 2022, pet. denied) (mem. op.) ("A parent's refusal to acknowledge and treat a mental health diagnosis can support a finding that termination is in a child's best interest.").

The trial court heard testimony that J.A.D. is diagnosed with "[a]utism, unspecified intellectual disability, and child neglect" and requires a specialized level of care. TEX. FAM. CODE ANN. §§ 263.307(b)(1), (6) (providing the trial court consider the child's physical and mental vulnerabilities and the results of psychiatric, psychological, or developmental evaluations of the child when considering the child's best interest). J.A.D. is nonverbal but will communicate with certain people. He has been receiving speech therapy, occupational therapy, and play therapy since coming into the Department's care. Mother testified she learned from the autistic learning course

how children with autism receive information, how they like to be "loners," and "how sensitive they are with different things." However, Saldana testified Mother was unable to apply what she learned in the autistic learning classes during her visits with J.A.D.

Saldana and Mother both testified that J.A.D. has a bond with mother. Mother attended eighteen out of twenty-five visits and testified she takes clothing, snacks, and activities to interact and play with J.A.D. during the visits. However, Saldana testified J.A.D. seems angry with Mother at visits and is unable to verbalize it. Saldana witnessed visits with Mother where J.A.D. scratched, hit, and spit out his food and drink. During one visit, J.A.D. ripped out Mother's earring and threw it across the room. Mother acknowledged that J.A.D. slapped Mother in the face during a visit.

In contrast, Saldana testified J.A.D. does not have any problems at school or at the shelter where he was staying at the time of trial. Saldana stated J.A.D. "eats well; sleeps well;" and "he plays well with others." She further testified J.A.D. likes to go outside, play on the playground, and enjoys puzzles and other activities that require using his hands.

Although J.A.D. was living in a shelter at the time of trial, Saldana testified the Department was placing him in a foster-to-adopt home that day. The foster family is aware of J.A.D.'s behaviors and needs and has met with J.A.D. According to Saldana, the meeting with the foster family went well. J.A.D. did not exhibit the negative behaviors he shows when he is with Mother and he even "used a couple of words during the visit when [the foster family was] communicating with him." One of the foster parents is a school principal and will be able to assist with educational needs and has received training to deal with children diagnosed with autism. *See In re S.D.*, 980 S.W.2d 758, 764 (Tex. App.—San Antonio 1998, pet. denied) (holding it was in the children's best interests to place them "in a stable environment where they can receive proper care for their special needs").

Saldana opined termination of Mother's parental rights was in J.A.D.'s best interest because Mother is unable to provide J.A.D. with his basic needs and has not shown the ability to improve with additional time. In contrast, Saldana testified the foster family will be able to meet J.A.D.'s needs and provide him with a permanent home.

Although the trial court heard some evidence that J.A.D. shares a bond with Mother, there was overwhelming evidence that Mother may still pose a danger to J.A.D. due to her inability to overcome her drug addiction and her failure to take the necessary steps to show she can provide J.A.D. with his basic needs. And, while the trial court heard evidence J.A.D. had been living in a shelter, it also heard evidence that J.A.D. was being placed with a foster-to-adopt family on the day of trial. Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in J.A.D.'s best interest. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

Accordingly, Mother's fourth issue is overruled.

## CONCLUSION

We affirm the trial court's order terminating Mother's parental rights to the child.

Irene Rios, Justice